**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| KRISTIN HANNA, individually and on behalf of all others similarly situated,<br><br>                 Plaintiff,<br><br>    v.<br><br>CAMPBELL SOUP COMPANY and PLUM, PBC,<br><br>                 Defendants. | Case No. 1:21-cv-12842<br><br>**CLASS ACTION COMPLAINT**<br>**<u>(JURY TRIAL DEMANDED)</u>** |

Plaintiff Kristin Hanna ("Plaintiff"), by and through undersigned counsel, brings this action against Campbell Soup Company and Plum, PBC ("Defendants," or collectively "Plum") on behalf of herself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

## <u>PRELIMINARY STATEMENT</u>

1. Plaintiff brings this case as a result of Plum's negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the heavy metal or other ingredients that do not conform to the labels, packaging, advertising and statements of Plum's products sold throughout the United States, including this District. Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class including (i) requiring full disclosure of all such substances and ingredients in Plum's marketing, advertising and labeling; (ii) requiring testing of ingredients and final products for such substances; and (iii) restoring monies to the members of the proposed Class.

## <u>PARTIES</u>

2. Defendant Campbell Soup Company is a New Jersey corporation with its principal place of business located in Camden, New Jersey.

3.     Defendant Plum, PBC is a Delaware corporation with its principal place of business located in San Francisco, California.  At all material times, Plum, PBC has been a wholly owned subsidiary of Defendant Campbell Soup Company.

4.     Plaintiff Kristin Hanna is an individual and resident and citizen of the state of South Carolina and purchased Defendant's Baby Foods (defined below) for consumption by her child.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

6.     This Court has personal jurisdiction over Defendants because Defendants conduct business in New Jersey and have sufficient minimum contacts with New Jersey.

7.     Venue is proper in this District under 28 U.S.C. § 1391(d) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND FACTS

8.     Plum manufactures, markets, advertises, labels, distributes and sells baby food products throughout the United States, including in this District.

9.     The Plum baby food products (hereinafter "Baby Foods") at issue include, but are not limited to:

- Plum Organics Baby Food Pouches, Stage 1: Just Peaches, Just Sweet Potato, Just Mangos and Just Prunes;

- Plum Organics Baby Food Pouches, Stage 2: Apple Butternut Squash & Granola, Pear Blueberry Avocado & Granola, Strawberry Banana & Granola, Mango Carrot & Coconut Cream, Butternut Squash Carrot Chickpea & Corn, Peach Banana & Apricot, Sweet Potato Apple & Corn, Apple & Carrot, Guava pear & Pumpkin, Apple Spinach & Avocado, Apple Raisin & Quinoa,

Apple Blackberry & Coconut Cream, Banana & Pumpkin, Apple Raspberry Spinach & Greek Yogurt, Pea Kiwi Pear & Avocado, Pear Green Bean & Greek Yogurt, Pear & Mango, Peach Pumpkin Carrot & Cinnamon, Banana Zucchini & Amaranth, Mango Sweet Potato Apple & Millet, Mango Yellow Zucchini Corn & Turmeric, Apple & Broccoli, Apple Plum Berry & Barley, Pear Spinach & Pea, Apple Cauliflower & Lee, Carrots Beans Spinach & Tomato, Pumpkin, Spinach Chickpea & Broccoli, Kale Corn Carrot & Tomato, Pear Purple Carrot & Blueberry;

- Plum Organics Baby Food Pouches, Stage 3: Carrot Spinach Turkey Corn Apple & Potato, Carrot Sweet Potato Corn Pea & Chicken, Carrot Chickpea Pea Beef & Tomato;

- Plum Organics Baby Food Pouches, Tots: Mighty Morning, Mighty Fiber, Mighty 4 Food Group Blend, Mighty Veggie, Mighty Protein & Fiber;

- Plum Organics Mashups: Applesauce Blueberry Carrot, Applesauce Carrot & Mago, Applesauce Strawberry Banana, Applesauce Strawberry & Beet;

- Plum Organics Super Puffs: Apple with Spinach, Strawberry with Beet, Mango with Sweet Potato, and Blueberry with Purple Sweet Potato;

- Plum Organics Little Teethers: Apple with Leafy Greens, Banana with Pumpkin, and Blueberry;

- Plum Organics Mighty Nut Butter Bar;

- Plum Organics Mighty Snack Bars;

- Plum Organics Mighty Morning Bar;

- Plum Organics Jammy Sammy; and

- Plum Organics Teensy Snacks.

10.    Plum states that the Baby Foods it sells are, among various things, organic, non-GMO, free from artificial preservative, and safe and suitable for consumption by infants and

young children.[1]

**COMMITTED TO THE BEST ORGANIC FOOD**

Quality and transparency are woven into the fibers of our brand. We go beyond standard regulatory compliance to ensure integrity of our products. This includes:

- Organic, and non-GMO, always
- Strict ingredient requirements
- Regular supplier audits



11.     Plum's packaging and labels further emphasize quality and safe ingredients that are suitable for consumption by infants and young children.[2]

---

[1] https://www.plumorganics.com/wp-content/uploads/2019/05/Plum_MissionReport2018.pdf
[2] See e.g., https://www.plumorganics.com/products/peaches-baby-food/.

12.     Plum's representations and warranties included a "Commitment" to caregivers that its foods were healthy and contained only safe, organic ingredients.[3]

13.     Plum has additionally made the following representation regarding its testing: "Campbell's has conducting testing on every Plum Organics product on the market to ensure none exceed acceptable levels of arsenic, lead, cadmium or mercury . . . To date, no Plum Organics food has been found to be above exposure limits set by available domestic and international regulatory bodies…"[4]

14.     Plum represented and warranted that its "Stage 1" foods, for children 4 months and older, are "perfect for introducing solids or first foods to your budding eater . . . [and include] only non-GMO, organic ingredients."[5]

15.     Plum's "Stage 2" foods, for children 6 months and older, are marketed as "organic baby food pouches . . . made with blends of fruit, veggies, grains and Greek yogurt that are perfect for exposing your little foodie to unique flavors and colors."[6]

16.     Plum's "Stage 3" foods, are marketed as "perfect for budding foodies," that "develop a baby's palate while helping to transition baby to table foods."[7]

17.     Plum used ages such as "4+," "6+," and "9+," to emphasize the foods' nutritious value and suitability for consumption by young children and infants.

18.     Plum claims that its "Tots" foods are "a puree of organic fruits, veggies, protein and grains, are the perfect snack for toddlers."[8]

---

[3] https://www.plumorganics.com/food-philosophy/
[4] Letter from Thomas Perrelli on behalf of Campbell to Raja Krishnamoorthi, Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform (Dec. 11, 2019).
[5] https://www.plumorganics.com/baby-snacks/
[6] Id.
[7] Id.
[8] https://www.plumorganics.com/tots-snacks/

19. Plum makes similar claims related to its "Kids" foods and other "snacks."

20. Yet nowhere in the labeling, advertising, statements, warranties, and/or packaging does Plum disclose that its Baby Foods include and/or have a high risk of containing heavy metal or other ingredients that do not conform to the labels, packaging and statements.

21. Indeed, Plum's baby food products have been shown to contain significant levels of arsenic, mercury, lead, and cadmium[9]- all known to pose health risks to humans and particularly infants.

22. Despite this, Plum warrants, promises, represents, misleads, labels and/or advertises that the Baby Foods are free of any heavy metal and/or unnatural ingredients by making assurances that the foods are natural and safe for infant consumption.

23. It was recently revealed, on information and belief, that Plum was knowingly, recklessly and/or negligently selling the Baby Foods containing arsenic, mercury, cadmium and/or lead.

## FACTUAL ALLEGATIONS

24. At all times relevant, Plum knew or should have known that the Baby Foods contained heavy metals, had a risk of containing heavy metals and/or were not sufficiently tested for heavy metals. During this time, Plum omitted any reference to the presence, or risk of the presence, of heavy metals form the Baby Foods' packaging.

25. Plum knew or should have known that heavy metals were a potentially dangerous contaminant that pose health risks to babies and children. Plum knew or should have known that

---

[9] Jane Houlihan and Charlotte Brody, What's in my baby's food?, HEALTHY BABIES BRIGHT FUTURES (Oct. 2019), https://www.healthybabyfood.org/sites/ healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf

the standards for the presence of heavy metals in baby food have become increasingly stringent in recent years.

26.     Plum knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize, the presence, or risk, of heavy metals in the Baby Foods.

27.     Plum knew or should have known that it owed consumers a duty of care to adequately test for heavy metals in the Baby Foods.

28.     Plum knew that consumers purchased the Baby Foods based on the reasonable expectation that Plum manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by babies. Plum knew or should have known that consumers reasonably inferred that Plum would hold the Baby Foods to the highest standards for preventing the presence, or risk, of heavy metals.

29.     On February 4, 2021 the Subcommittee on Economic Consumer Policy ("Subcommittee") of the United States House of Representatives issued a report titled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury"[10] ("House Report"). The House Report detailed the findings from an extensive inquiry focused on the safety of baby food products, and found that many of the products by the country's largest commercial baby food manufacturers, including Plum, "contain significant levels of toxic heavy metals, including arsenic, lead, cadmium and mercury, which can endanger infant neurological development."[11]

---

[10] Id.
[11] https://washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/

30.     The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[12]

31.     Despite repeated requests made to Plum, it failed to fully cooperate with the House inquiry. Specifically, Plum "refused to produce its testing standards and specific testing results to the Subcommittee…[and] has hidden its policies and the actual level of toxic heavy metals in its products." The House Report explained that instead "of producing any substantive information, [Plum] provided a spreadsheet self-declaring that every one of its products 'meets criteria.'" However, Plum's "testing summary hides more than it reveals, since it does not show the levels of heavy metals that the testing found or the levels of heavy metals that would 'meet criteria.'" For instance, Plum advised that all of its products "meet criteria" for mercury levels, yet it revealed that "it has no criterion whatsoever."

32.     The Subcommittee expressed "grave concerns about baby food products manufactured by . . . Campbell (Plum Organics)." Specifically, the Subcommittee was "greatly concerned that [Plum's] lack of cooperation might obscure the presence of even higher levels of toxic heavy metals in their baby food products, compared to their competitors' products."[13]

33.     Upon information and belief, Plum failed and refused to fully cooperate with the Subcommittee investigation because it did not want to disclose the dangerous levels of heavy metals and perchlorate in its baby food products, which would have demonstrated the falsity of its

---

[12] https://oversight.house.gov/news/press-releases/oversight-subcommittee-staff-report-reveals-top-baby-foods-contain-dangerous
[13] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf, at 5.

representations and warranties with regard to the safety, ingredients, and nutritional value of its baby food products.

34.     Upon information and belief, Plum's refusal to cooperate with a government investigation intended to protect the safety and development of babies and children was deliberate, and intended to protect its profits and financial priorities at the expense of the safety and health of babies and children.

35.     Despite Plum's lack of cooperation, the House Report cited data reported by an organization concerned with the health and safety of baby food products.  According to the "Healthy Babies Bright Futures Report: What's in My Baby's Food?" ("HBBF Report"), some Plum products tested high in arsenic, lead, cadmium and mercury.  The HBBF Report also found troubling levels of perchlorate, a neurotoxin, in some Plum baby food products.

36.     Exposures to these heavy metals "diminish quality of life, reduce academic achievement and disturb behavior, with profound consequences for the welfare and productivity or entire societies."[14]

37.     The heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[15]  Even in trace amounts found in food, these heavy metals can alter the developing brain and erode a child's IQ.[16]

---

[14] Jane Houlihan and Charlotte Brody, What's in my baby's food?, HEALTHY BABIES BRIGHT FUTURES (Oct. 2019), https://www.healthybabyfood.org/sites/ healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf, at 13.
[15] Id., at 6.
[16] Id., at 1.

38.     Research continues to confirm that exposures to food containing arsenic, lead, mercury and cadmium causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[17]

39.     The Baby Foods may contain arsenic which, when exposed to children early in life, causes "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[18]  There is no evidence that the harm caused by arsenic is reversible.[19]  Arsenic exposure also creates a risk of "respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]"[20]

40.     In October 2019, the Healthy Babies Bright Futures nonprofit organization notified Plum of the presence of unacceptable, dangerous levels of heavy metals and perchlorate in their baby food products.[21]  Even after being notified in this manner, Plum failed to take adequate measures to sell baby food products without unsafe levels of heavy metals and perchlorate, or to adequately warn consumers.

41.     Indeed, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals."[22]

---

[17] Id.
[18] Id. at 13.
[19] Id.
[20] https://pubmed.ncbi.nlm.nih.gov/23570911/
[21] Jane Houlihan and Charlotte Brody, What's in my baby's food?, HEALTHY BABIES BRIGHT FUTURES (Oct. 2019), https://www.healthybabyfood.org/sites/ healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf
[22] https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm

42.    Despite the known risks of exposure to these heavy metals, Plum has negligently, recklessly and/or knowingly sold the Baby Foods without disclosing they may contain levels of arsenic, mercury, cadmium and lead to consumers like Plaintiff.

43.    Additionally, Plum knew or should have been aware that a consumer would be feeding the Baby Foods multiple times each day to his or her child, making it the primary source of food for the child.  This leads to repeated exposure of the heavy metals to the child.

44.    Plum has wrongfully and misleadingly advertised and sold the Baby Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the baby's body to the point where poisoning, injury and/or disease can occur.

45.    Plum's omissions are material, false, misleading and reasonably likely to deceive the public.  This is true especially considering the long-standing campaign by Plum to market the Baby Foods as healthy, safe, and high-quality to induce consumers, such as Plaintiff, to purchase the products.  For instance, Plum markets that its "Stage 1" foods, for children 4 months and older, are "perfect for introducing solids or first foods to your budding eater."[23]

46.     At all times relevant, Plum knew or should have known that Baby Foods contained perchlorate, were at risk of containing perchlorate, and/or were not sufficiently tested for perchlorate.  During this time, Plum omitted any reference to the presence or risk of perchlorate from the Baby Foods' packaging

47.    Plum knew or should have known that perchlorate is potentially dangerous contaminant that poses health risks to babies and children.

---

[23] https://www.plumorganics.com/baby-snacks/

48.     Plum knew that consumers purchased the Baby Foods based on the reasonable expectation that Plum manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by babies.  Plum knew or should have known that consumers reasonably inferred that Plum would hold the Baby Foods to the highest standards for preventing the presence or risk of perchlorate and for testing for perchlorate.

49.     Despite the risk and/or actual presence of these unnatural and potentially harmful chemicals, Plum prominently warrants, claims, features, represents, advertises or otherwise markets the Baby Foods as natural and appropriate for consumption by a baby in the stated "Stage," and fails to disclose the presence, or risk of heavy metals and perchlorate.

50.     Plum formulates, develops, manufactures, labels, packages, distributes, markets, advertises, and sells its extensive Plum lines of baby food products across the United States, including the Baby Foods.

51.     Plum positions the Baby Foods as the "Very Best Food" and "100% Certified Organic" to place them within the premium category of baby food.

52.     Plum has represented a commitment to using nutritious, simple, organic, and quality ingredients.

53.     Plum had a duty to ensure the Baby Foods lived up to these representations and marketing, positioning the Baby Foods as high-quality and premium.  As such, Plum knew or should have known that the Baby Foods had a high risk and/or actually included heavy metals, perchlorate and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising and statements, including that the Baby Foods contained only natural organic or "real food" ingredients.

54.    Plum specifically promises on its website that it "has a comprehensive quality and food safety program that encompasses an ingredient testing program for new supplier which includes testing for heavy metals."[24]   As such, Plum knew or should have known that the Baby Foods contained, or had a risk of containing, heavy metals, perchlorate and/or unnatural or other ingredients.

55.    Based on these false representations, Plum charges a premium, knowing that the claimed natural make-up of the Baby Foods (as well as all of the other alleged false and/or misleading representations discussed herein) is something an average consumer would consider as a reason in picking more expensive baby food products.

56.    Additionally, Plum knew or should have known that its ingredients and the final products could contain materials such as toxins, heavy metals and perchlorate and yet they did not test all ingredients and finished products, including the Baby Foods, for such materials.

57.    Third-party testing has made clear that the Baby Foods may in fact contain levels of both heavy metals and/or perchlorate.

58.    Plum knew that consumers such as Plaintiff and the proposed Class would be the end purchasers of the Baby Foods and the target of its advertising and statements.

59.    Plum intended that the warranties, advertising, labeling, statements and representations would be considered by the end purchasers of the Baby Foods, including Plaintiff and the proposed Class.

60.    Plum directly marketed to Plaintiff and the proposed Class through statements on its website, labeling, advertising and packaging.

---

[24] https://web.archive.org/web/20201124042331/https://www.plumorganics.com/faqs/

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

**The Class:**

All persons in the United States who purchased the Baby Foods for household or business use, and not for resale.

62.     Excluded from the Class are Campbell Soup Company and Plum, PBC and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.  Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

63.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

64.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

65.     The members of the Class are so numerous and geographically dispersed that individual joinder of all members is impracticable. Plaintiff is informed and believes that there are thousands of members of the Class, the precise number being unknown to Plaintiff, but such number being ascertainable from Plum's records. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

66.    This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Class, including, without limitation:

(a)    Whether Plum engaged in the conduct alleged herein;

(b)    Whether Plum owed a duty of care to Plaintiff and the Class;

(c)    Whether Plum knew or should have known that the Baby Foods contained, or may contain, heavy metals;

(d)    Whether Plum knew or should have known that the Baby Foods contained, or may contained, perchlorate;

(e)    Whether Plum wrongfully represented and continues to represent that the Baby Foods are natural and safe for human infant consumption;

(f)    Whether Plum wrongfully represented and continues to represent that the Baby Foods are healthy, superior quality, nutritious and safe for consumption;

(g)    Whether Plum wrongfully represented and continues to represent that the Baby Foods are natural;

(h)    Whether Plum wrongfully represented and continues to represent that the Baby Foods are appropriate for consumption by various "Stage[s]" of babies;

(i)    Whether Plum wrongfully represented and continues to represent that the manufacturing of its Baby Foods is subjected to rigorous standards, including testing for heavy metals;

(j)     Whether Plum wrongfully failed to disclose that its Baby Foods contained, or may contain, heavy metals and/or perchlorate;

(k)     Whether Plum's representations in advertising, warranties, packaging and/or labeling are false, deceptive and misleading;

(l)     Whether those representations are likely to deceive a reasonable consumer;

(m)    Whether a reasonable consumer would consider the presence, or risk of, heavy metals and/or perchlorate as a material fact in purchasing baby food;

(n)     Whether Plum had knowledge that those representations were false, deceptive and misleading;

(o)     Whether Plum continues to disseminate those representations despite knowledge that the representations are false, deceptive and misleading;

(p)     Whether representations that a product is healthy, of superior quality, nutritious and safe for consumption and does not contain arsenic, mercury, cadmium, lead and/or perchlorate is material to a reasonable consumer;

(q)     Whether Plum's representations and descriptions on the labeling of the Baby Foods are likely to mislead, deceive, confuse or confound consumers acting reasonably;

(r)     Whether Plum breached its express warranties;

(s)     Whether Plum breached its implied warranties;

(t)     Whether Plum engaged in unfair trade practices;

(u)     Whether Plum engaged in false advertising;

(v)     Whether Plum made negligent and/or fraudulent misrepresentations and/or omissions;

(w)     Whether Plum was unjustly enriched by its charging and failure to fully refund excessive auto insurance premiums;

(x)     Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(y)     Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(z)     The amount and nature of relief to be awarded to Plaintiff and the other members of the Class.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

67.     Plaintiff's claims are typical of the claims of other members of the Class because, among other things, all such members were similarly situated and were comparably injured through Plum's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

68.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of other members of the Class they seek to represent. Plaintiff has retained counsel competent and experienced in complex litigation and Plaintiff intends to prosecute the action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

69.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other members of the Class are relatively small compared to the burden and expense that would

be required to individually litigate their claims against Plum, so it would be impracticable for members of the Class to individually seek redress for Plum's wrongful conduct.

70.     Even if members of the Class could afford individual litigation, the court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

71.     To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

72.     Plum has acted or refused to act on grounds generally applicable to Plaintiff and other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

**CAUSES OF ACTION**

**FOR A FIRST COLLECTIVE CAUSE OF ACTION**
**Breach of Express Warranty**
**(Plaintiff and Other Members the Class)**

73.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

74.     Plaintiff brings this count on behalf of herself and other members of the Class.

75.     Plum marketed and sold the Baby Foods into the stream of commerce with the intent that the Baby Foods would be purchased by Plaintiff and the Class.

76.     Plum expressly represented and warranted that the Baby Foods were organic, free from added preservatives and artificial flavors, and safe for consumption by infants and young children.

77.     Plum made these express warranties regarding the Baby Foods' quality, ingredients and fitness for consumption in writing on the Baby Foods' packaging and labels through its website, advertisements and marketing materials. These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Baby Foods.

78.     Plum's advertisements, warranties and representations were made in connection with the sale of the Baby Food to Plaintiff and the Class. Plaintiff and the Class relied on Plum's advertisements, warranties and representations regarding the Baby Foods in deciding whether to purchase the Baby Foods.

79.     Plum's Baby Foods do not conform to Plum's advertisements, warranties and representations in that they are not safe or appropriate for consumption by infants and young children, and contain, or may contain, levels of various heavy toxic metals.

80.     Plum was on notice of this breach as they were aware of the included heavy metals and/or perchlorate in the Baby Foods and based on the public investigation by the Healthy Babies Bright Futures report that showed its baby food products as unhealthy and containing dangerous levels of heavy metals.

81.     The inclusion of unsafe levels of heavy metals and perchlorate is material because unsafe levels of these toxins rendered Plum baby food products dangerous, presenting a significant, unreasonable risk of physical and cognitive harm, and thus rendering the Baby Food worthless.

82.     Plaintiff and the Class would not have purchased the Baby Foods in the absence of these false and misleading representations and warranties, and/or if the true facts had been disclosed.

83.     Privity exists because Plum expressly warranted to Plaintiff and the Class through the warranting, packaging, marketing and labeling that the Baby Foods were natural and perfect for consumption and by failing to make any mention of heavy metals or other unnatural ingredients.

84.     All conditions precedent to Plum's liability under the above-referenced contract have been performed by Plaintiff and the other members of the Class.

85.     As a direct and proximate result of Plum's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising and statements.

86.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available thereunder for Plum's failure to deliver goods conforming to their express warranties and resulting breach.

### FOR A SECOND COLLECTIVE CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (Plaintiff and Other Members the Class)

87.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

88.     Plaintiff brings this count on behalf of herself and other members of the Class.

89.     Plum is a merchant engaging in the manufacturing and sale of goods that were purchased by Plaintiff and members of the Class.

90.     At all times mentioned herein, Plum manufactured or supplied the Baby Foods, and prior to the time the Baby Foods were purchased by Plaintiff and the Class, Plum impliedly warranted to them that the Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Baby Foods' containers and labels, including that the food was natural, safe and appropriate for consumption by human infants.  Plaintiff and the Class relied on Plum's promises and affirmations of fact when they purchased the Baby Foods.

91.     The Baby Foods were not fit for their ordinary use (consumption by babies) and did not conform to Plum's affirmations of fact and promises as they contained or were at risk of containing heavy metals and/or other ingredients or contaminants that do not conform to the packaging.

92.     Plum breached its implied warranties by selling Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

93.     Plaintiff was on notice of this breach, as it was aware of the heavy metals included or at risk of being included in the Baby Foods and based on the public investigation by Healthy Babies Bright Futures that showed Plum's baby foods were unhealthy, contaminated and potentially dangerous, as well as the extensive press coverage of the investigation.

94.     Privity exists because Plum impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing and labeling that the Baby Foods were natural and suitable for consumption by babies, and by failing to make any mention of heavy metals or other unnatural ingredients.

95.     As a direct and proximate result of Plum's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals, perchlorate and/or other ingredients.

96.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Plum's failure to deliver goods conforming to their implied warranties and resulting breach.

## FOR A THIRD COLLECTIVE CAUSE OF ACTION
### Fraudulent Misrepresentation
### (Plaintiff and Other Members the Class)

97.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

98.     Plaintiff brings this count on behalf of herself and other members of the Class.

99.     Plum expressly represented and warranted that the Baby Foods were organic, free from added preservatives and artificial flavors, and safe for consumption by infants and young children.

100.     Plum intentionally, knowingly and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Baby Foods.

101.     Plum knew that its representations about the Baby Foods were false in that the Baby Foods contained or were at risk of containing levels of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising and statements.  Plum allowed its packaging, labels, advertisements, promotional materials and websites to intentionally mislead consumers such as Plaintiff and the Class.

102.     Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Baby Foods to their detriment.  Given the deceptive manner in which Plum advertised,

represented and otherwise promoted the Baby Foods, Plaintiff's and the Class's reliance on Plum's misrepresentations was justifiable.

103.    As a direct and proximate result of Plum's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising and statements.

104.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available.

### FOR A FOURTH COLLECTIVE CAUSE OF ACTION
### Fraud by Omission
### (Plaintiff and Other Members the Class)

105.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

106.    Plaintiff brings this count on behalf of herself and other members of the Class.

107.    Plum knowingly and intentionally materially misrepresented and omitted, concealed from, and failed to disclose to Plaintiff and the Class that its Baby Foods contained, or were at risk of containing, heavy metals, perchlorate and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising and statements.

108.    Plum had a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients, suitability and risks of the Baby Foods because: (1) Plum was in a superior position to know the true state of facts about its products; (2) Plum was in a superior position to know the actual ingredients, characteristics and suitability of the Baby Foods for consumption by babies; and (3) Plum knew that Plaintiff and the Class could not have reasonably

been expected to learn or discover that the Baby Foods were misrepresented in the packaging, labels, advertising and websites prior to purchasing the Baby Foods.

109. The facts concealed or not disclosed by Plum to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase Baby Foods.

110. Plaintiff and the Class justifiably relied on Plum's omissions to their detriment. The detriment is evident from the true quality, characteristics and ingredients of the Baby Foods, which is inferior in comparison to Plum's advertisements and representations of the Baby Foods.

111. As a direct and proximate result of Plum's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of dangerous levels of heavy metals and toxins.

112. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available.

## FOR A FIFTH COLLECTIVE CAUSE OF ACTION
### Negligent Misrepresentation
### (Plaintiff and Other Members the Class)

113. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

114. Plaintiff brings this count on behalf of herself and other members of the Class.

115. Plum had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacturing, marketing, distribution and sale of the Baby Foods.

116. Plum breached its duty to Plaintiff and the Class by formulating, testing, manufacturing advertising, marketing, distributing and selling products to Plaintiff and the Class that do not have the ingredients, qualities, characteristics and suitability for consumption as

advertised by Plum and by failing to promptly remove the Baby Foods from the marketplace or to take another appropriate remedial action.

117.     Plum knew or should have known that the ingredients, qualities and characteristics of the Baby Foods were not as advertised or suitable for their intended use (consumption by babies) and were otherwise not as warranted and represented by Plum.  Specifically, Plum knew or should have known that: (1) certain Baby Foods were not natural because they contained, or were at risk of containing, levels of perchlorate; (2) the Baby Foods were not nutritious, of superior quality, pure, natural, healthy and safe for consumption because they contained, or had a risk of containing, levels of heavy metals and/or other unnatural ingredients or contaminants that do not conform to the packaging; (3) the Baby Foods were adulterated, or at risk of being adulterated, by heavy metals; and (4) the Baby Foods were otherwise not as warranted and represented by Plum.

118.     As a direct and proximate result of Plum's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they would have paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising and statements.

119.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available

**FOR A SIXTH COLLECTIVE CAUSE OF ACTION**
**Unjust Enrichment**
**(Plaintiff and Other Members the Class)**

120.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

121.     Plaintiff brings this count on behalf of herself and other members of the Class.

122.    Substantial benefits have been conferred on Plum by Plaintiff and the Class through their purchase of the Baby Foods.  Plum knowingly and willingly accepted and enjoyed these benefits.

123.    Plum either knew or should have known that the payments rendered by Plaintiff and the Class were given and made with the expectation that the Baby Foods would have the qualities, characteristics, ingredients and suitability for consumption as represented and warranted by Plum.  As such, it would be inequitable for Plum to retain the benefit of the payments under the circumstances.

124.    Plum's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Plum to retain the benefits and not return the value of payments made by Plaintiff and the Class.

125.    Plaintiff and the Class are entitled to recover from Plum all amounts wrongfully collected and improperly retained by Plum, plus interest thereon.

126.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available.

**FOR A SEVENTH COLLECTIVE CAUSE OF ACTION**
**Violation of New Jersey Consumer Fraud Act, N.J.S.A. 56: 8-1 *et seq.***
**(<u>Plaintiff and Other Members the Class</u>)**

127.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

128.    Plaintiff brings this count on behalf of herself and other members of the Class.

129.    The New Jersey Consumer Fraud Act prohibits, among other things:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . .

N.J.S.A. § 56:8-2.

130.     Plum's misrepresentations and false, deceptive, and misleading statements and omissions with respect to the inclusion of unsafe levels of heavy metals and perchlorate in the Baby Foods, as described herein, constitute affirmative misrepresentations and omissions in connection with the marketing, advertising, promotion and sale of Baby Foods in violation of the New Jersey Consumer Fraud Act.

131.     Plum's false, deceptive, and misleading statements and omissions were and would have been material to any potential consumer's decision to purchase the Baby Foods.

132.     Plum failed to inform consumers that the Baby Foods contained unsafe levels of heavy metals and perchlorate.  That information would have been material to any consumer deciding whether to purchase the Baby Foods.

133.     Plum made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements, and Plaintiff and the Class did rely on such statements and omissions.

134.     Upon information and belief, Plum's misrepresentations and omissions were created, approved, and implemented from its New Jersey headquarters.

135.     Plaintiff and the Class suffered an ascertainable loss as a direct and proximate result of Plum's violations of the New Jersey Consumer Fraud Act.

136.     As a consequence of Plum's wrongful actions, Plaintiff and the Class suffered an ascertainable monetary loss based on and measured by the price they paid for the Baby Foods, which they would not have paid in the absence of the aforesaid wrongdoing.

137.    Plaintiff and the Class suffered an ascertainable loss caused by Plum's misrepresentations and omissions because they would not have purchased the Baby Foods if the true facts concerning unsafe levels of heavy metals and perchlorate would have been known.

138.    Plum's sale of Baby Foods containing unsafe levels of heavy metals and perchlorate for consumption by children was unconscionable, and the misrepresentations and omissions it made with regard to the Baby Foods were made for the sole purpose of inducing consumers to purchase the Baby Foods to feed to their children irrespective of any health consequences. Plum's conduct was intentional, wanton, willful, malicious, and in blatant disregard or grossly negligent and reckless with respect to the life, health, safety, and well-being of children eating the Baby Foods. Plum is therefore liable for treble damages and punitive damages, in an amount to be determined at trial.

139.    By reason of the foregoing, Plum is liable to Plaintiff and the Class for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit. N.J.S.A.§§ 56:8-2.11, 8-2.12, 8-19.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment against the Plum as to each and every count including:

A.  An order declaring this action to be a proper class action, appointing Plaintiff and its counsel to represent the Class, and requiring Plum to bear the costs of class notice;

B.  An order enjoining Plum from selling the Baby Foods until the levels of heavy metals and/or perchlorate are removed or full disclosure of the presence of such appears on all labels, packing and advertising;

C. An order enjoining Plum from selling the Baby Foods in any manner suggesting or implying that they are healthy, natural and safe for consumption;

D. An order requiring Plum to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E. An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Plum from continuing the unlawful practices alleged herein and injunctive relief to remedy Plum's past conduct;

F. An order requiring Plum to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair or fraudulent business act or practice, untrue or misleading advertising or a violation of law, plus pre- and post-judgment interest thereon;

G. An order requiring Plum to disgorge or return all monies, revenues and profits obtained by means of any wrongful or unlawful act or practice;

H. An order requiring Plum to pay punitive damages on any count so allowable;

I. An order awarding attorney's fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

J. An order providing for all other such equitable relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 22, 2021

**MOREA SCHWARTZ BRADHAM**
**FRIEDMAN & BROWN LLP**

By: /s/ Thomas A. Brown II
      Thomas A. Brown II
      John M. Bradham (*Pro Hac Vice Forthcoming*)
      Peter B. Katzman (*Pro Hac Vice Forthcoming)*
      444 Madison Avenue, 4th Floor
      New York, New York 10022
      Tel: (212) 695-8050
      Email: tbrown@msbllp.com
             jbradham@msbllp.com
             pkatzman@msbllp.com

**ANASTOPOULO LAW FIRM LLC**

      Roy T. Willey, IV (*Pro Hac Vice Forthcoming*)
      Eric M. Poulin (*Pro Hac Vice Forthcoming*)
      Blake G. Abbott (*Pro Hac Vice Forthcoming*)
      Jarrett W. Withrow (*Pro Hac Vice Forthcoming*)
      32 Ann Street
      Charleston, SC 29403
      Tel: (843) 614-8888
      Fax: (843) 494-5536
      Email: roy@akimlawfirm.com
             eric@akimlawfirm.com
             blake@akimlawfirm.com
             jarrett@akimlawfirm.com

      ATTORNEYS FOR PLAINTIFF AND THE
      PROPOSED CLASS